## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRISTOPHER J. CAVANAUGH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 12-1012-KHV** |
| **MICHAEL J. ASTRUE, Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. For the reasons stated below, the Court affirms the Commissioner's decision.

### Procedural Background

On March 11, 2008 plaintiff protectively filed applications for DIB under Title II and SSI under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq., alleging disability as of March 1, 2003. The Commissioner denied plaintiff's claims initially and on reconsideration. On September 22, 2009, an administrative law judge ("ALJ") held a hearing on plaintiff's claims. On November 3, 2009, the ALJ found as follows: With respect to plaintiff's application for DIB, plaintiff was not disabled before June 30, 2003, the date he was last insured. With respect to plaintiff's application for SSI, plaintiff was disabled beginning on March 11, 2008. On November 7, 2011, the Appeals Council denied plaintiff's request for review, finding no reason to review the ALJ decision. The ALJ decision therefore stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c)(3); see also R. 4. On January 6, 2012, plaintiff appealed to this Court

the final decision of the Commissioner.

## **Facts**

Plaintiff was born in 1966 and alleges that he became disabled on March 1, 2003 due to spinal surgery on his neck, a metal plate in his back, severe spinal stenosis, lung problems, addiction to pain killers, a hiatal hernia, coronary artery disease, angina and high blood pressure.  He previously worked as a cook and a stock clerk.  After careful consideration of the entire record, the ALJ concluded as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2003.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. Since the alleged onset date of disability, March 1, 2003, the claimant has had the following severe impairments: history of cervical spinal fusion with degenerative disease, addiction to pain medication and recent diagnosis of anxiety related disorders (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, March 1, 2003, the claimant has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that prior to March 11, 2008, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).

6. After careful consideration of the entire record, the undersigned finds that beginning on March 11, 2008, the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant was limited to lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8 hour work day, standing or walking about 6 hours in an 8 hour workday with no climbing of ladders, ropes or scaffolding and occasional climbing of ramps, and stairs, balancing and crawling with an inability to sustain work on a regular and continuing basis.

7.    Since March 1, 2003, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8.    Prior to the established disability onset date, the claimant was a younger individual age 18-49.  The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10.   Prior to March 11, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills.  Beginning on March 11, 2008, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.   Prior to March 11, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12.   Beginning on March 11, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13.   The claimant was not disabled prior to March 11, 2008 (20 CFR 404.1520(g) and 416.920(g)), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 27-43.

Plaintiff appealed the ALJ decision to the Appeals Council.  Finding no reason to review the

decision, the Appeals Council denied plaintiff's request for review.

## **Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal

error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009);

see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

Plaintiff must demonstrate the error in the rationale or finding of the ALJ; the mere fact that there is evidence which might support a contrary finding will not establish error. See Lax, 489 F.3d at 1084. The possibility of drawing two inconsistent conclusions from the evidence does not mean that the Commissioner's findings are not supported by substantial evidence. Id. The Court may not displace the Commissioner's choice between two fairly conflicting views. Id. Where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the Court will not reweigh the evidence and reject that conclusion even if the Court might have reached a contrary conclusion in the first instance.

**Analysis**

An individual is under a disability only if he can establish that he has a physical or mental impairment that prevents him from engaging in any substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987

F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A)).   Claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education and work experience, engage in other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  In the first three steps, the Commissioner determines (1) whether claimant has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment and (3) whether the severity of any impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  20 C.F.R. § 404.1520; Williams, 844 F.2d at 750-51.  If claimant satisfies steps one, two and three, he will automatically be found disabled; if claimant satisfies steps one and two but not three, he must satisfy step four.

After evaluating step three, the Commissioner assesses claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at steps four and five of the sequential evaluation process.  Id.  In step four, the Commissioner determines whether, based on claimant's RFC, he can perform past relevant work.  20 C.F.R. § 404.1520(a)(4);  see Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four, claimant bears the burden of showing that he had one or more severe impairments that made him unable to perform past relevant work.  See Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001).  At step five, the burden shifts to the Commissioner to show that based on claimant's RFC, age, education and work

experience, he can perform other work.  See 20 C.F.R. § 404.1520(a)(5); Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff argues that the ALJ erred by (1) arbitrarily determining plaintiff's RFC for the period between March 1, 2003 and March 11, 2008, see 20 C.F.R. § 404.1545; (2) failing to conduct a proper credibility analysis, see SSR 96-7p, 1996 WL 374186; and  (3) arbitrarily finding that plaintiff did not become disabled until March 11, 2008, see SSR 83-20, 1983 WL 31249.

**I.      Title II and Title XVI Onset Dates**

Plaintiff appeals the final decision of the Commissioner to deny DIB under Title II and SSI under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq.  Plaintiff's DIB and SSI applications are governed by different rules regarding the onset date and periods for which benefits may be awarded.  Under Title II, plaintiff is eligible for DIB only if he was disabled before the date he was last insured.  See 20 C.F.R. § 404.131; SSR 83-20, 1983 WL 31249, at *1 (Title II worker cannot be found disabled unless insured status is also met at time when evidence establishes presence of disabling condition); Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996) (claimant must establish disability existed before date last insured).  Plaintiff alleges that he became disabled on March 1, 2003.  R. 190.  He was last insured on June 30, 2003.  R. 35;  Plaintiff's Social Security Brief (Doc. #12) filed June 22, 2012 at 2.  Therefore, for purposes of plaintiff's DIB application, the relevant period for determining plaintiff's ability to work is March 1 to June 30, 2003.  The ALJ found that plaintiff was not disabled before June 30, 2003, and therefore denied plaintiff's DIB application.  R. 43.

Under Title XVI, plaintiff is not eligible to receive SSI benefits for any period before the date on which he filed for SSI.  20 C.F.R. § 416.335; SSR 83-20, 1983 WL 31249, at *1, 7; Kepler v.

Chater, 68 F.3d 387, 389 (10th Cir. 1995).  To be entitled to SSI, plaintiff must show that he was

disabled between the date on which he applied for SSI benefits and the date of the ALJ decision.

20 C.F.R. §§ 416.330, 416.335 and 416.1476(b)(1); Baldwin v. Barnhart, 167 Fed. Appx. 49, 51

(10th Cir. 2006).  Plaintiff protectively filed for SSI on March 11, 2008.  March 11, 2008, is

therefore the earliest possible onset date for plaintiff's application for SSI.  See Baldwin, 167 Fed.

Appx. at 51.  For purposes of plaintiff's SSI application, the ALJ found that plaintiff was disabled

beginning March 11, 2008.  R. 43.  Like the ALJ, the Court will examine medical evidence from

before March of 2008, but only for purposes of establishing a baseline from which to evaluate

plaintiff's medical status.  Id.

## II.    Credibility Determination

Plaintiff argues that the ALJ erred by not engaging in a proper credibility analysis as required

by SSR 96-7p, 1996 WL 374186.  ALJ credibility determinations are generally treated as binding

on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d

407, 413 (10th Cir. 1983).  Credibility determinations are peculiarly the province of the finder of

fact and will not be overturned when supported by substantial evidence.  Wilson v. Astrue, 602 F.3d

1136, 1144 (10th Cir. 2010).  The Court will therefore usually defer to the ALJ on matters involving

witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  But see Thompson v.

Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) (deference not absolute rule).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding

symptoms and impairments as follows:

> A claimant's subjective allegation of pain is not sufficient in itself to establish
> disability.  Before the ALJ need even consider any subjective evidence of pain, the
> claimant must first prove by objective medical evidence the existence of a
> pain-producing impairment, that could reasonably be expected to produce the alleged

> disabling pain. . . .   The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must
> consider (1) whether Claimant established a pain-producing impairment by objective
> medical evidence; (2) if so, whether there is a "loose nexus" between the proven
> impairment and the Claimant's subjective allegations of pain; and (3) if so, whether,
> considering all the evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (citations omitted).

When ascertaining the credibility of a claimant's testimony, the Commissioner should take into consideration all the evidence, including the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988); Hargis v. Sullivan, 945 F.2d 1482, 1489-90 (10th Cir. 1991).  When the ALJ finds that claimant is not credible, the ALJ must make specific findings and state his reasons for disbelief.  See Caldwell v. Sullivan, 736 F. Supp. 1076, 1081 (D. Kan. 1990).

Plaintiff contends that the ALJ erred by (1) disregarding plaintiff's testimony on September 22, 2009, that he was limited to sitting for two to three hours, standing for five to eight minutes and walking no more than a quarter mile, and (2) giving significant weight to plaintiff's statement that he had no problems with home living or self care.

Plaintiff explained his impairments in response to the ALJ's questions about plaintiff's job at a hotel, which he started in 2008.  See R. 54-60.  Citing medical reports from 2002, plaintiff argues that the medical evidence as a whole supports his testimony regarding his limitations.  The

relevant time period, however, is March 1 to June 30, 2003.  After reviewing all of the evidence, the ALJ found that plaintiff's allegations regarding his limitations were not credible with respect to the relevant time period – March 1 to June 30, 2003 – because "there is no medical evidence of these limitations for periods prior to the date last insured," "[n]o doctor who has treated or examined the claimant has stated or implied that he is disabled or seriously incapacitated for periods prior to the application for benefits," plaintiff and his mother "completed daily activity statements without evidence of significant concerns (exhibit SD, 6D, 9E, 14E)" and at a "consultative mental examination in January 2009, [plaintiff] reported no problems with home living or self care (exhibit 1 OF)."  R. 40-41.  In ascertaining the credibility of plaintiff's statements regarding his limitations for the relevant time period, the ALJ took into account several of the relevant factors listed in Huston.  See 838 F.2d at 1132; Hargis, 945 F.2d at 1489-90.  Moreover, as the ALJ noted, plaintiff's allegations regarding his limitations do not relate to the relevant period – March 1 to June 30, 2003.  See R. 40.  After giving full consideration to all relevant facts, and as discussed more fully below, see infra Part III, the Court finds that the credibility determination of the ALJ is supported by substantial evidence.  See 20 C.F.R. § 404.1529; Hargis, 945 F.2d at 1489; see also Dellinger v. Barnhart, 298 F. Supp. 2d 1130, 1137-38 (D. Kan. 2003).

Plaintiff also argues that the ALJ placed too much weight on plaintiff's statement that he had no problems with home living or self care.  The ALJ noted that at a consultative examination in January of 2009, plaintiff reported no problems with home living or self care.  R. 41.  As noted above, however, the nature of plaintiff's daily activities is a factor that the Commissioner should consider in determining the credibility of plaintiff's allegations regarding his limitations.  As plaintiff notes, an ALJ "may not rely on minimal daily activities as substantial evidence that a

claimant does not suffer disabling pain." <u>Thompson</u>, 987 F.2d at 1490.  But the ALJ did not rely on plaintiff's daily activities alone.  Rather, he considered all the evidence in determining the credibility of plaintiff's statements regarding his limitations.  The ALJ did not err in considering plaintiff's daily activities as one factor among several in ascertaining plaintiff's credibility.  <u>See Huston</u>, 838 F.2d at 1132.

**III.     Plaintiff's RFC**

Plaintiff argues that the ALJ erred by arbitrarily determining plaintiff's RFC for the period from March 1, 2003 to March 11, 2008.  He contends that the ALJ ignored substantial medical evidence establishing that plaintiff suffered from severe impairments resulting from spinal stenosis.

For purposes of determining whether plaintiff is eligible for DIB or SSI, however, March 1, 2003 to March 11, 2008 is not a relevant time frame.  To be eligible for DIB, plaintiff must show that he was disabled between his alleged onset date (March 1, 2003) and the date he was last insured (June 30, 2003).  Plaintiff is only eligible for SSI, however, beginning on the date of his application (March 11, 2008).  Because March 11, 2008 is the earliest onset date for plaintiff's SSI application, and because the ALJ found that plaintiff was disabled as of March 11, 2008, plaintiff's arguments that the ALJ erred in determining plaintiff's RFC for the period of March 1, 2003 to March 11, 2008 are relevant only to plaintiff's DIB application.  Even then, plaintiff's arguments are relevant only to the extent that plaintiff contends that the ALJ erred in finding that plaintiff was not disabled between March 1 and June 30, 2003.

In attacking the ALJ RFC determination, plaintiff focuses much of his argument on the ALJ's credibility assessment.  Because the purpose of the credibility evaluation is to help the ALJ assess a plaintiff's RFC, the credibility and RFC determinations are inherently intertwined.  <u>Poppa</u>

v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009).  An erroneous credibility assessment therefore requires reassessment of the RFC.  See id.  To the extent plaintiff attacks the ALJ's RFC by contesting his credibility determination, the Court applies the framework for reviewing credibility determinations discussed above.

A claimant's RFC is the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184.  The Commissioner assesses RFC based on all the relevant evidence in the record, including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment and work evaluations.  SSR 96-8p, 1996 WL 374184.  Plaintiff contends that the ALJ ignored relevant medical evidence because he did not cite a single exhibit from the medical record and instead relied on considerations that were completely irrelevant or of very little probative value.  Id.

First, plaintiff takes issue with the ALJ observation that plaintiff's alleged onset date was March 1, 2003, but that plaintiff did not file for benefits until March 11, 2008.  Plaintiff argues that this fact is irrelevant.  In determining the intensity and persistence of symptoms, and the extent to which symptoms limit the capacity for work, Social Security regulations require consideration of treatment other than medication that plaintiff has received for relief of pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); see Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (claimant's persistent attempts to find relief for symptoms, willingness to try any treatment prescribed and regular contact with doctor bear on claimant's subjective complaints and therefore extent to which symptoms limit capacity for work).  The ALJ did not err in considering the delay

as one of several factors in weighing plaintiff's credibility and the extent of his impairments.

Second, plaintiff contests the ALJ finding that plaintiff had minimal medical evidence for the relevant period – March 1, 2003 to June 30, 2003.  He argues that "the majority of the medical evidence originates from this time period, or in close temporal proximity to it," that it indicates that plaintiff suffered from severe impairments due to spinal stenosis and that the ALJ erred in ignoring or forgetting about this evidence when determining plaintiff's RFC.  Plaintiff's Social Security Brief (Doc. #12) filed June 22, 2012 at 9 (citing R. 378-424).  In the same brief, however, plaintiff concedes that "[t]here are few medical records describing [plaintiff's] impairments from March 1, 2003, until 2006."  Id. at 7.  As the ALJ noted, plaintiff's medical records from 2002 indicate that plaintiff had moderate spinal stenosis, that plaintiff complained of sharp neck pain, that plaintiff had cervical spine surgery in mid-2002 and that plaintiff apparently did not seek medical treatment for his back during the time period in question.

In determining plaintiff's RFC for March 1 to June 30, 2003, the ALJ reviewed all of the evidence and summarized much of it in his decision.  R. 38-40.  His statement that the record contained minimal evidence from this time period is supported by substantial evidence, particularly as it relates to plaintiff's spinal stenosis.  See R. 378-424.  Moreover, the extent of plaintiff's medical record from March to June of 2003 is a relevant consideration in determining the extent of plaintiff's impairments.  See 20 C.F.R. § 404.1529(c)(3)(v).

Third, plaintiff argues that in weighing plaintiff's overall credibility, the ALJ should not have considered the fact that plaintiff did not seek treatment for spinal stenosis from March 1 to June 30, 2003.  In determining whether plaintiff's pain is disabling, the ALJ should consider (among other things) the extensiveness of plaintiff's attempts (medical or nonmedical) to obtain relief and the

frequency of medical contacts.  Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).  Inability to pay for treatment may justify failure to pursue or seek treatment, see Threet v. Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003), but it does not automatically weigh in favor of plaintiff, see McKenney v. Apfel, 38 F. Supp.2d 1249, 1256-57 (D. Kan. 1999).  In determining the veracity of plaintiff's complaints about the extent of his impairments, the ALJ may consider what attempts he made to seek medical treatment.  Qualls v. Apfel, 206 F.3d 1368, 1372-73 (10th Cir. 2000); Farmer v. Astrue, No. 10-2386, 2011 WL 1434663, at *7-8 (D. Kan. April 14, 2011); see also Huston, 838 F.2d at 1132.

Plaintiff contends that he had to forego treatment because his medical insurance would not cover the expenses, and that his failure to seek treatment could therefore "just have likely been attributable to lack of affordable insurance coverage" – which was out of plaintiff's control. Plaintiff's Social Security Brief (Doc. #12) at 9.  The medical record that plaintiff cites in support of this statement, which is dated March 28, 2002 from Rush-Copley Medical Center, states as follows:

> Patient complains of cervical spine pain since several weeks prior to arrival.  The pain radiates to arms bilaterally, right greater than left. He has been seen three times in the past week here at Copley ER.  He initially states that his cervical spine MRI on 3/23/02 was his first MRI of that area (that he only had previous lumber [sic] spine investigation), and that he was unable to see our neurosurgeon because of his insurance plan.  Upon further investigation, he had a cervical and thoracic spine MRI 10/01, has been evaluated by Glen Ellyn Neurosurgeon Dr Caron, considered to have non-surgical disease, and refered [sic] to Pain Clinic at Rush Chicago.  He continues to return to ER for pain medications.  Dr Scruggs, on call this past weekend for PMD Dr Briney, reports patient calling him repeatedly for narcotics, and "not wanting to make Dr Briney mad".  Upon review of Dr Caron office records, patient has shown up in office clinically intoxicated, as well as indicating once that "his mother stole his prescription for vicoden [sic] to sell the drugs on the street to obtain money to bail his brother out of jail".  Patient is ambulatory about ER without difficulty, observed to use both arms/hands appropriatey [sic] to use telephone and call his wife. He denies incontinence of bowel and bladder, fever, new neck/back trauma.  He

denies significant recent respiratoy [sic] or gastrointestinal illness.

R. 381.

This medical record indicates that plaintiff's insurance would not cover an appointment with a neurosurgeon, but it also shows that plaintiff had been evaluated by a neurosurgeon and that he went to the emergency room when he experienced neck pain.  Indeed, plaintiff sought emergency room care, inpatient hospital care and outpatient drug therapy through the date he was last insured, but these records do not indicate that plaintiff complained of pain related to spinal stenosis during the relevant period.  See R. 387 (on September 11, 2002, plaintiff reported neck pain after surgery; had been doing well post-surgery; neck supple, nontender, no lymphadenopathy; surgical wound clean, dry, intact and without fluctuance or drainage); R. 393 (on September 18, 2002, last report of post-surgery neck pain before last day insured; plate and screws in good position, bony structures in good alignment and position, no other abnormalities noted); R. 394 (on September 26, 2002, plaintiff injured left forearm lifting weights, no report of back or neck pain; on October 15, 2002, cough and chest congestion); R. 398-421 (May of 2003 through February of 2004, admitted to hospital for mass on leg from car accident, repeated drug therapy, several hospital admissions for respiratory issues, no report of back or neck pain); R. 437 (on October 11, 2005, normal lumbar spine alignment, disc spaces well maintained, no fracture or subluxation, negative lumbar spine, no report of back or neck pain); R. 443 (on October 11, 2005, back pain due to fall).

In determining plaintiff's credibility and in turn his RFC, the ALJ did not err in considering the fact that plaintiff did not seek treatment for spinal stenosis from March 1 to June 30, 2003.

Fourth, plaintiff argues that the determination of his RFC did not reflect the true extent of his limitations because the ALJ only discussed his addiction to opiates and not any of the other

severe impairments which the ALJ identified at step two.  At step two, the ALJ found that plaintiff suffered from the following severe impairments: history of cervical spinal fusion with degenerative disease, addiction to pain medication and recent diagnosis of anxiety-related disorders.  R. 37.  In determining whether plaintiff is disabled, the Commissioner must consider plaintiff's symptoms and impairments in combination.  20 C.F.R. § 404.1529.

Plaintiff contends that because the ALJ did not mention the spinal fusion with degenerative disease and the anxiety disorders, the RFC does not reflect the true extent of his limitations.  But the ALJ did discuss plaintiff's spinal stenosis, noting "some degenerative changes of the cervical spine status – post cervical fusion," R. 40, and it appears that plaintiff's anxiety disorder did not arise until some time in 2008 or 2009 – long after the date when plaintiff was last insured, see R. 482 (on January 7, 2009, plaintiff complained of increased anxiety around people which had become worse in last year).  The ALJ did not err in the manner in which he considered plaintiff's impairments.

Fifth, plaintiff argues that the ALJ did not establish that his coronary heart disease and relating complications did not manifest before June 30, 2003, the date when plaintiff was last insured.  At the hearing, plaintiff testified that he started having heart problems in 2003.  R. 76-77.  In 2006, Andrew Bishop, M.D., a cardiologist, noted known coronary artery disease and "[s]tatus post angioplasty for myorcardial infarction approximately four years ago."  R. 431.  In 2008, James Henderson, M.D., an internal medicine doctor and associate of the Academy of Disability Examining Physicians, noted that plaintiff had a six-year history of chest pain, including shortness of breath, occurring three to four times a week, lasting five minutes; that emotion or lifting weights brought on the pain; that plaintiff takes nitroglycerin which relieves the pain within two to four minutes; that plaintiff had a heart catheterization in 2006 and at that time plaintiff had a normal

ejection fraction. R. 457. Dr. Henderson also noted that plaintiff claimed to have had a heart attack in 2002. Id.

Plaintiff contends that in determining his RFC, the ALJ erred by not considering his heart condition. But the ALJ did address plaintiff's heart condition in determining plaintiff's RFC. In determining plaintiff's severe impairments, the ALJ stated as follows:

> The claimant has reported an onset date of March 1, 2003 with a date last insured of June 30, 2003. He has also reported some problems with coronary disease. On August 18, 2006, the claimant presented to the Cardiology Department at New Hanover Regional Medical Center with chest pain. A left heart catheterization was performed on August 1, 2006 and was unremarkable with ejection fraction at 60 percent (exhibit 3F/7). The claimant has reported the use of Nitroglycerin medication since that date.
>
> The claimant had routine health care at Hunter Health Clinic without evidence of significant concerns (exhibit 4F). A consultative examination was performed at Central Medical Consultants on June 12, 2008 and July 18, 2008. The claimant . . . reported chest pain with lifting or emotion and took Nitroglycerin as needed. Chest x-rays were unremarkable.

R. 38. In determining plaintiff's RFC, the ALJ stated as follows: "Although the claimant has reported coronary artery disease, the record notes catheterization with a normal ejection fraction in August 2006, after the date last insured." R. 40. Therefore the ALJ did not disregard plaintiff's heart condition in determining plaintiff's RFC, but found – based on the medical evidence – that plaintiff's heart condition did not affect his ability to work. See id. As discussed below, this conclusion is supported by substantial evidence.

Plaintiff also contends that because medical evidence does not clearly document the progression of his heart condition, the ALJ should have developed the record on this point. This argument attempts to improperly shift the burden of proof from plaintiff to the ALJ. The ALJ does not bear the burden of establishing that plaintiff's impairments did not exist; plaintiff, who was

represented by counsel, bears the burden of establishing that his alleged impairments existed during the relevant time period.  Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991).

The medical evidence shows that during visits to the emergency room in 2002 and 2004, plaintiff denied chest pain or discomfort.  R. 381, 384, 387, 403.  Physical examinations from that time showed that plaintiff had regular heart rate and sinus rhythm.  R. 381-82, 384, 387, 403, 417.  In May of 2002, his EKG was normal.  R. 422.  A chest x-ray in July 2002 showed normal heart size, R. 393, and laboratory results indicated that myocardial damage was unlikely.  R. 392.

A nondisabling condition which develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II.  See Markham v. Califano, 601 F.2d 533, 536 (10th Cir. 1979).  It is not enough that the impairments existed before June 30, 2003, the date on which plaintiff's insured status expired – the impairments must have been disabling at that time.  See id.

The ALJ did not find plaintiff's heart condition to be a severe impairment, meaning it did not significantly limit plaintiff's ability to do basic work activities.  See R. 37-38; see 20 C.F.R. § 404.1521; Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  For the reasons stated above, the ALJ did not err in determining plaintiff's RFC, and his finding is supported by substantial evidence in the record.

**IV.    Disability Onset Date**

Plaintiff argues that the determination that he became disabled on March 11, 2008 – not March 1, 2003 – was arbitrary and inconsistent with the record.  He contends that the ALJ (1) ignored plaintiff's alleged onset date, work history and the medical record, (2) improperly drew a negative inference based on plaintiff's lack of medical records related to his heart condition before

2006 and (3) should have obtained the testimony of a medical expert regarding the onset date.

By determining that plaintiff was not disabled before the date he was last insured (June 30, 2003) the ALJ denied plaintiff's DIB application. See R. 43; 20 C.F.R. § 404.131; SSR 83-20, 1983 WL 31249, at *1 (Title II worker not disabled unless insured status met at time when evidence establishes presence of disabling condition); Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996) (claimant must establish disability existed before date last insured).  As discussed above, this decision is supported by substantial evidence.

The onset date of March 11, 2008, only relates to plaintiff's SSI application under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq.  With respect to determining onset dates under Title XVI, SSR 83-20, provides as follows:

> [E]xcept for certain cases of aliens where an exact onset date of disability must be determined for eligibility purposes, the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met.

SSR 83-20, 1983 WL 31249, at *1.

Here, the ALJ found that plaintiff's disability began on the date he filed his application for SSI benefits.  He therefore did not have to separately determine a specific onset date.  See id.  The ALJ's decision is supported by substantial evidence in the record.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

Dated this 26th day of November, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-18-